**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1364**

SARA L. FOX,

        Plaintiff - Appellant,

    v.

LELAND VOLUNTEER FIRE/RESCUE DEPARTMENT, INC.; JOHN GRIMES, in his individual and official capacities as Chief of the Department,

        Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Louise W. Flanagan, District Judge. (7:12-cv-00354-FL)

Argued: March 21, 2016              Decided: May 5, 2016

Before AGEE and THACKER, Circuit Judges, and Henry E. HUDSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

**ARGUED:** Sara Lyn Faulman, WOODLEY & MCGILLIVARY, LLP, Washington, D.C., for Appellant. Paul H. Derrick, DERRICK LAW GROUP, Raleigh, North Carolina, for Appellees. **ON BRIEF:** Thomas A. Woodley, WOODLEY & MCGILLIVARY, LLP, Washington, D.C., for Appellant. Melody J. Jolly, CRANFILL SUMNER & HARTZOG LLP, Wilmington, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Until her termination on January 5, 2011, Sara L. Fox ("Fox") was a lieutenant with the Leland Volunteer Fire/Rescue Department ("the Department") in Brunswick County, North Carolina. The Department is staffed by nineteen career firefighters and approximately eighty-five other individuals who serve on a volunteer basis. Fox was the first female career employee to be promoted to the position of lieutenant. In that capacity, she served as a shift supervisor overseeing not only firefighting operations, but also training and administrative duties.

In her complaint, Fox alleges that during her service as a shift supervisor, she was subjected to continuous condescending and disrespectful behavior from her male subordinates. The persistent hostility, she contends, resulted in a hostile work environment, which she attributes to her gender. She further alleges that she was subsequently terminated in retaliation for filing complaints about her workplace treatment. Fox named both the Department and its Chief, John Grimes ("Chief Grimes"), as defendants.

Finding that Fox failed to either forecast evidence linking the alleged hostile work environment to her sex, or demonstrate that the true motivation for her termination was retaliation, the district court granted the Defendants' motion for summary

3

judgment as to the hostile work environment and retaliatory discharge claims under Title VII of the Civil Rights Act; her claim for retaliation for speaking out about her alleged sexual harassment as a matter of public concern, in violation of the First Amendment; and her claim of violations of the Equal Protection Clause of the Fourteenth Amendment.

While we agree that Fox's evidence fails, as a matter of law, to support her hostile work environment, First Amendment, and Equal Protection claims, we vacate and remand as to Fox's claim of retaliatory discharge, in violation of Title VII of the Civil Rights Act.

The Department serves five counties in North Carolina. Chief Grimes oversees the Department's operations. The Department is governed by a seven person board of directors, of which Chief Grimes is not a member. The chain of command consists of Chief Grimes, an assistant chief, two captains, and eight lieutenants. Four of the eight lieutenants are career firefighters. Each lieutenant supervises a shift of paid and volunteer employees.

Fox began her career in July 2008 as a firefighter/paramedic. After her first year of service, following a competitive application process, she was promoted to lieutenant and placed in charge of "D" shift, which, according to the record, had a reputation for being dysfunctional.

4

From the inception of her command, she experienced what she describes as disparate treatment and harassment from her subordinates. This included declining to eat food which she purchased and prepared at her own expense, ignoring her attempts to organize or facilitate training, and leaving the fire station without her permission. Fox maintained that her immediate subordinates, the relief supervisors, were impertinent and disrespectful. The relief shift supervisors, in her view, avoided interaction with her and refused to perform tasks she assigned. They also complained to her superiors about her leadership.

Fox contends that Chief Grimes treated her differently from her male counterparts. For example, she was not provided access to the lieutenant's computer for approximately one month following her promotion, was required to complete tasks not required of male lieutenants, and was not permitted to give her subordinate firefighters their performance evaluations, unlike other lieutenants.

In June 2010, approximately one year after her promotion to lieutenant, Fox received a negative performance evaluation, as a result of which she was placed on a ninety-day probationary period. The evaluation noted that she had failed to meet four training goals identified in her 2009 evaluation, missed several

staff meetings, and was ineffective in communicating with members of her shift.

In December 2010, Chief Grimes met with Fox to discuss continuing reports from firefighters on her shift concerning her leadership and performance. Chief Grimes remarked that her subordinates were "throwing [her] under the bus" and that she "must feel like [she] was in a hostile working environment." (J.A. at 709 (alterations in original).) During the meeting, Chief Grimes offered suggestions about how she could improve her effectiveness as a leader and assured her that she was not being considered for termination. Contrary to this representation, Chief Grimes and his wife, who was a member of the board of directors of the Department, represented, after this lawsuit was initiated, that they were privately considering Fox's termination around the time of this December meeting.

Fox did not mention to Chief Grimes at the December 2010 meeting the harassing and discourteous behavior she was experiencing from her subordinates and peers. In the month following that meeting, she submitted three formal discrimination complaints to Chief Grimes. All three were unanswered. At that point, Fox engaged an attorney to file a formal complaint of gender discrimination with the Equal Employment Opportunity Commission ("EEOC").

6

On January 2, 2011, Fox disclosed to a female co-worker that she had consulted with an attorney about filing an EEOC complaint. That same day, the co-worker notified Chief Grimes of her conversation with Fox, including hiring of legal counsel. Chief Grimes promptly recommended to the board of directors that Fox be terminated. Two days later, on January 5, 2011, Fox was terminated for her purported poor work performance, insubordination, and unwillingness to accept management's suggestions for improvement.

By Memorandum Opinion and accompanying Order entered March 10, 2015, the district court granted Defendants' motion for summary judgment as to all counts.[1] The district court found Fox's evidence of a sexually-hostile work environment inadequate to demonstrate that it was both objectively and subjectively offensive. (J.A. at 729–31.) The court acknowledged that while objective hostility is "quintessentially a question of fact, in certain circumstances summary judgment is appropriate to avoid creat[ing] a 'general civility code' in the workplace." (J.A. at 729 (alteration in original) (internal citations omitted)

---

[1] Defendants contend that the district court lacked subject matter jurisdiction to entertain Plaintiff's Title VII claim because it was not included in her original EEOC complaint. The district court concluded that it was a "close call," and the original allegations were sufficient to encompass the Title VII claim. (J.A. at 727.) We find no reason to question the district court's conclusion.

(quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998); Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 335 (4th Cir. 2010)).) The district court concluded that the offensive conduct alleged by Fox was insufficient to alter the conditions of her employment as required by Oncale. (J.A. at 729.)[2]

With respect to Fox's retaliation claims, the district court found the evidence insufficient to show that Defendants' true motive in terminating her was retaliation. (J.A. at 731.)

A grant of summary judgment is reviewed de novo by this Court. Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 354 (4th Cir. 2011). We are required to view the facts and all justifiable inferences arising therefrom in the light most favorable to the non-moving party in order to determine whether "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Woollard v. Gallagher, 712 F.3d 865, 873 (4th Cir. 2013) (quoting Fed. R. Civ. P. 56(a)). A dispute is genuine if "a reasonable jury

---

[2] In noting the scant evidence of sexual hostility, the district court identified only two relevant events -- the fact that a firefighter referred to a coworker as a "hooker" and a comment by a relief supervisor that Fox was only promoted because of her gender. Relying on Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the district court found these comments to be neither severe nor pervasive enough to warrant relief. (J.A. at 730–31.) We agree.

8

could return a verdict for the nonmoving party." Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012). A fact is material if it "might affect the outcome of the suit under the governing law." Henry v. Purnell, 652 F.3d 524, 548 (4th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

Turning first to Fox's gender-based claims, we find no evidence in the record to support her contention that she suffered from a discriminatorily hostile or abusive work environment, in violation of Title VII. Her subordinates' conduct was discourteous, insubordinate, and perhaps at times boorish, but not demonstrative of sexual animus. As Judge Wilkinson noted in EEOC v. Sunbelt Rentals, Inc.:

> Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life. Thus, complaints premised on nothing more than "rude treatment by [coworkers]," . . . are not actionable under Title VII.

521 F.3d 306, 315–16 (4th Cir. 2008) (first alteration in original) (internal citations omitted).

A similar analysis supports the conclusion that Fox failed to show an actionable claim for a violation of the Equal Protection Clause of the Fourteenth Amendment, which is also enforced through 42 U.S.C. § 1983.

9

With respect to Fox's claim that she was discharged in retaliation for her complaints to Chief Grimes of rude and insubordinate behavior by her subordinates, these claims largely depend on circumstantial evidence. Therefore, the district court conducted its analysis under the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Under this three-tiered analytical framework, a plaintiff must initially demonstrate a *prima facie* case of retaliation. This requires proof (1) that she engaged in protected activity; (2) that her employer took an adverse employment action; and (3) that a but-for causal connection existed between the protected activity and the asserted adverse action. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, ___ U.S. ___, 133 S. Ct. 2517, 2532–33 (2013); Foster v. Univ. of Md.–E. Shore, 787 F.3d 243, 250 (4th Cir. 2015). If a plaintiff succeeds in this threshold showing, the defendant is afforded an opportunity to produce evidence of "a legitimate, nondiscriminatory reason for the adverse employment action." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2014) (en banc). If the employer makes this showing, plaintiff may rebut such evidence by demonstrating that the employer's purported non-retaliatory reasons "were not its true reasons, but were a pretext for

10

discrimination." Id. (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000)).

In the immediate case, the district court assumed, *arguendo*, that Fox could establish a *prima facie* case, but concluded that Fox's "retaliation claim fails because she cannot demonstrate that her termination was truly motivated by retaliation." (J.A. at 732.) Viewing the evidence in the light most favorable to Fox, we cannot agree that there is no genuine dispute of material fact with respect to the motivation for Fox's termination. The record reveals conflicting evidence as to the timing of Chief Grimes' decision to terminate Fox in close proximity to learning of her complaint to the EEOC. The evidence of Fox's alleged insubordination during her December 1, 2010 meeting with Chief Grimes is also less than clear. When questioned in their depositions about the December 1 meeting, both Chief Grimes and the assistant chief declined to characterize her deportment as insubordinate.

As this Court noted in EEOC v. Sears Roebuck & Co., a different explanation for termination, provided at different times, is "in and of itself, probative of pretext." 243 F.3d 846, 852–53 (4th Cir. 2001). This inference can be drawn not only when an employer provides different explanations at different times, but also when the explanations appear inconsistent. Thurman v. Yellow Freight Sys., Inc., 90 F.3d

11

1160, 1167 (6th Cir. 1996).  This Court will therefore vacate the district court's award of summary judgment on Fox's claim for retaliation under Title VII, 42 U.S.C. § 2000e, et seq, and remand for further proceedings on this claim.

A related strand of Fox's retaliation claim is Fox's contention that her unlawful discharge also violated her First Amendment right as a public employee to speak on a matter of public concern.  This claim was summarily rejected by the district court without substantive explanation.  First Amendment retaliation claims brought under 42 U.S.C. § 1983 are reviewed under a different analytical framework than those prosecuted under Title VII.  Campbell v. Galloway, 483 F.3d 258, 270 (4th Cir. 2007).

A public employee's speech is constitutionally protected only when it addresses a matter of public concern, as opposed to a matter of personal interest.  Kirby v. City of Elizabeth City, 388 F.3d 440, 448 (4th Cir. 2004).  "Speech involves a matter of public concern when it involves an issue of social, political, or other interest to a community."  Id. at 446; see also, Connick v. Myers, 461 U.S. 138, 146 (1983).  Whether speech addresses a matter of public concern is a question of law for the court.  Urofsky v. Gilmore, 216 F.3d 401, 406 (4th Cir. 2000).

12

It is well-established in this circuit that "we may affirm [a] dismissal by the district court upon the basis of any ground supported by the record even if it is not the basis relied upon by the district court." Ostrzenski v. Seigel, 177 F.3d 245, 253 (4th Cir. 1999); see also, Hutto v. S.C. Ret. Sys., 773 F.3d 536, 549–50 (4th Cir. 2014).

We are not convinced that Fox's discussions with Chief Grimes concerning personal employment issues rise to the level of a matter of public concern. The district court properly granted summary judgment on Fox's First Amendment retaliation claim.

This Court will therefore affirm the district court's dismissal of the hostile work environment claim under Title VII, her Equal Protection claim and First Amendment claim brought under 42 U.S.C. § 1983, and vacate the lower court's dismissal of the Title VII retaliation claim and remand that claim for further proceedings.

                                    AFFIRMED IN PART,
                                     VACATED IN PART,
                                      AND REMANDED

13